UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LESLIE MCDERMOTT** | : |
| | : CIVIL ACTION |
| vs. | : |
| | : NO. 17-cv-4511 (MAK) |
| **GREAT LAKES DREDGE AND DOCK CO.** | : |

**BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF DEFENDANT GREAT LAKES DREDGE AND DOCK CO.**

Defendant, Great Lakes Dredge and Dock Co., LLC, (hereinafter "Defendant" or "GLDD"), by and through its undersigned attorneys, Palmer Biezup & Henderson LLP, respectfully submits this Brief in support of its Motion for Partial Summary Judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the Third Cause of Action of the Complaint seeking Maintenance and Cure.

## I. FACTS

This maritime case arises out of an alleged injury to the Plaintiff's left knee[1] which is claimed to have occurred on October 29, 2016. On the alleged date of the injury the Plaintiff was working as a seaman on board Defendant's Fuel Barge 1003 while the Barge was loading diesel fuel at a marine terminal in Elizabeth, New Jersey. The Plaintiff claims that he sustained his knee injury while moving a fuel hose after the transfer was completed. While Defendant vehemently disputes that the accident occurred at the time, place and in the manner alleged by the Plaintiff in his Complaint, Interrogatory Answers or Deposition testimony, for the purposes of this Motion only Defendant assumes, without agreeing, that Plaintiff sustained an injury to his left knee on October 29, 2016, and reported the incident on October 30, 2016. (Appx 001-003)

---

[1] Plaintiff testified that the only body part injured in his alleged accident was his left knee. (Appx. 217, Deposition of L. McDermott, P. 141 L. 21-23)

After completing an Employee Injury or Illness Questionnaire (Appx. 003) Plaintiff was transported by a GLDD employee to an Urgent Care Now facility in Manahawkin, New Jersey, on October 30, 2016, arriving at 9:20 a.m. Following his examination at Urgent Care Now, Plaintiff returned to work with restrictions on climbing and kneeling, and a follow-up appointment was scheduled. (Appx. 004-005, 007-008). On November 2, 2016, Plaintiff was again examined at Urgent Care Now. After this examination, Plaintiff was again returned to work with restrictions on climbing and kneeling, a follow-up appointment was scheduled and an MRI was ordered. (Appx. 012-013, 016-018). On November 8, 2016, Plaintiff underwent an MRI of his knee at Health Village Imaging. (Appx. 019) and on November 10, 2016, Plaintiff was examined at Urgent Care Now and was found to be fit only for "Sedentary Duty." (Appx. 022). Because there is no sedentary job on the Fuel Barge 1003, as of November 10, 2016, Plaintiff was found to be not fit for duty. Plaintiff was paid his full wages until November 10, 2016. (Appx. 030-036).

Plaintiff subsequently returned to his home in Pittsburgh, Pennsylvania, and was initially examined by orthopedic surgeon Dr. Darren Frank on November 18, 2016. (Appx. 037-43). Based on the MRI taken a week earlier, Dr. Frank determined that there was a tear of the medial meniscus and a probable tear of the lateral meniscus of the left knee. (Appx. 039). Following his examination Dr. Frank completed a Work Capabilities Report stating that Plaintiff was to remain on no work status. (Appx. 043). On December 6, 2016, Dr. Frank performed outpatient arthroscopic surgery and completed a partial resection of the medial and lateral menisci of Plaintiff's left knee. (Appx. 044-045). Following surgery, Plaintiff continued to be treated by Dr. Frank and underwent rehabilitation treatment with various providers. (See Appx. 046 for list of treatment).

On May 15, 2017, Plaintiff underwent a Functional Capacity Evaluation performed by NovaCare, which demonstrated that Plaintiff could perform the job functions required by his

2

former position with GLDD with the "abilities to function within the Heavy Physical Demand Category, according to the U.S. Department of Labor, on a full-time basis for an 8-hour work day." (Appx. 047). On May 31, 2017, Plaintiff underwent an examination by his treating orthopedic surgeon, Dr. Frank, who issued a Work Capabilities Report stating that Plaintiff was fit for duty as of May 31, 2017, and could return to full duty in the Heavy Work area with no restrictions as of June 12, 2017. (Appx. 060). Dr. Frank testified that his surgery was successful, that Plaintiff would not need any future surgery and that the only additional medical treatment that the Plaintiff might require would be for his pre-existing chronic progressive disease of osteoarthritis. (Deposition of Dr. Darren Frank, Appx. 096, L. 14-16; Appx. 135, L. 3 – 13; Appx. 144, L. 5-12; Appx. 146, L. 1-4; Appx. 147, L 6-7; Appx. 149, 5-10; Appx. 156, L. 5-8).

On June 22, 2017, as part of a job application to return to work as an Oiler/Engineer for another dredging company named Weeks Marine, Plaintiff underwent a complete physical performed by Anderson/Kelly Associates, Inc. In the medical papers related to this physical, Plaintiff advised that his knee pain was resolved and the examining physician concluded that there were no medical conditions that would place Plaintiff at an increased risk of material impairment, that no limitations were placed on his employment, and that Plaintiff was "physically capable to meet the demands of the position offered with no limitations." (Appx. 170-172). The Plaintiff was hired by Weeks Marine as an oiler and started work on July 5, 2018, and worked until the job ended. He then worked for several months for another dredging company named H&L Contracting in 2017 before again returning to work with Weeks Marine in February and March, 2018.

Plaintiff underwent an independent medical examination performed by Dr. Robert Mannherz on May 9, 2018. Dr. Robert Mannherz confirmed Dr. Frank's testimony and opinions that the Plaintiff was fit for duty with no restrictions following completion of rehabilitation

treatments in May 2017, that Plaintiff has returned to work in the maritime industry on multiple occasions with multiple employers since that time and that any ongoing discomfort or need for care relates to pre-existing mild osteoarthritis. (Appx. 173-181).

On October 10, 2017, Plaintiff filed a lawsuit against GLDD (Appx. 281-291, Complaint, ECF No. 1). The Third Cause of Action of the Complaint seeks recovery of Maintenance and Cure. (Appx. 285, Complaint, ECF No. 1). As a seaman allegedly injured while in service to a vessel, Plaintiff was entitled to receive Maintenance and Cure until such time as he reached the point of maximum medical improvement ("MMI"). On January 17, 2018, GLDD filed an Answer to the Complaint denying that Plaintiff was entitled to recover an additional Maintenance and Cure beyond the payments which had already been made by GLDD (Appx.292-302, Answer, ECF No. 6).

At the time of the alleged accident of October 29, 2016, Plaintiff was a member of the Local 25 Marine Division, International Union of Operating Engineers ("Local 25"). (Deposition of L. McDermott, Appx. 191, L. 9-10; Appx. 193, P. 43, L. 24 – P. 44, L. 4). As part of the contract between GLDD and Local 25, Plaintiff was entitled to receive maintenance payments at the rate of $35.00 per day to be paid every two weeks until he reached maximum medical improvement. GLDD paid maintenance of $490 ($35 x 14 days) to the Plaintiff every two weeks from November 11, 2016, the first day he was declared to be unfit for duty, through June 8, 2017, when his treating physician declared him fit for duty without restrictions. (Appx. 248-279). In addition, during the same period of time GLDD voluntarily paid advances of $42,410 to the Plaintiff to be credited against any settlement or judgment. (Appx. 248-279). In his deposition Plaintiff acknowledged receiving payments from GLDD every two weeks and that all of his medical costs had been paid by GLDD. (Deposition of L. McDermott, Appx. 217 (P. 139, L. 20 to P. 140 L. 17).

As reflected in the spreadsheet attached as Appendix 9 (Appx. 046), GLDD paid $12,140.07 to the various medical providers who treated the Plaintiff covering all charges for medical treatment related to the injury allegedly sustained in the October 29, 2016. The spreadsheet reflects additional payments made after June, 2017, because GLDD voluntarily continued to pay for Plaintiff's medical care for his pre-existing mild osteoarthritis, despite having no obligation to do so. GLDD also voluntarily paid premiums for an additional three months of health insurance coverage after the Plaintiff was declared fit for duty in June, 2017 (premiums of $4,713 for the months of June, July and August 2017), to bridge the gap until the Plaintiff returned to work. (Appx. 280). The Plaintiff has never contended that any medical bills submitted to GLDD for treatment of his alleged injury were not paid by GLDD.

The evidence and testimony presented in this case confirms that GLDD has met and exceeded all obligations to Plaintiff for payment of Maintenance and Cure for any injuries alleged to have been caused in his October 29, 2016, incident on the Fuel Barge 1003. As a result, the Plaintiff is not entitled to any further Maintenance and Cure and the Third Cause of Action of the Complaint should be dismissed, with prejudice, and the right to Maintenance and Cure be extinguished.

## II. LEGAL ARGUMENT

### A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is mandated where the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

5

(1986). Once the movant meets this burden, the burden then shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Mere allegations or denials will not defeat a well-supported motion for summary judgment. *See*: Fed. R. Civ. P. 56(e)(2).

The Supreme Court articulated the standard of review applicable to motions for summary judgment in *Celotex Corp.*:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . . In such a situation, there can be "no genuine issue as to any material fact", since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* at 477 U.S. 322-23.

This language was refined by the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), when the Court explained that, "[the summary judgment] standard mirrors the standard for a directed verdict, which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250. Thus, all that the moving party need do is demonstrate an absence of evidence to support the other side's case. Further, as this Court stated in *Pro-Spec Corp. v. Chester Water Auth.*, No. CV 16-4728, 2017 WL 2797897, at *1 n. 1 (E.D. Pa. June 28, 2017, Kearney, J.) "[i]n reviewing summary judgment motions, we consider the 'underlying facts and all reasonable inferences therefrom in the light most favorable to…the party opposing the motion.' *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted)." Finally, in response to a motion for summary judgment, the nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *Id.* at 250-

52. Unless the nonmoving party can meet this burden, the district court must order summary judgment for the moving party.

It is clear that in this case, Plaintiff cannot meet his burden and the claim for Maintenance and Cure and related allegations stated in the Third Cause of Action of the Complaint must be dismissed, with prejudice.

**B. DEFENDANT HAS MET AND EXCEEDED ALL OF ITS MAINTENANCE AND CURE OBLIGATIONS.**

GLDD is entitled to summary judgment on Plaintiff's Maintenance and Cure claim because all required maintenance has been paid, the Plaintiff has reached maximum medical improvement, or MMI, and all of the Plaintiff's medical bills have been paid. As stated in *Joyce v. Maersk Line, Ltd.*, No. CV 13-5566 (ES), 2016 WL 3566726, at *2 (D.N.J. June 30, 2016), *adhered to on reconsideration*, No. CV 13-5566 (ES), 2016 WL 8677319 (D.N.J. Aug. 12, 2016), and *aff'd on other grounds sub nom. Joyce v. Maersk Line Ltd*, 876 F.3d 502 (3d Cir. 2017), "[m]aintenance" refers to food and lodging at the expense of the ship, and "cure" refers to medical treatment. *Id.* "The shipowner is obliged to pay Maintenance and Cure until the seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable." *Barnes v. Andover Co., L.P.*, 900 F.2d 630, 633-34 (3d Cir. 1990). See also *Matter of Operation Bass, Inc.*, No. 114CV01138STAEGB, 2017 WL 6029645, at *11 (W.D. Tenn. Dec. 5, 2017) ("Maintenance refers to a ship owner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship, while cure alludes to the duty to provide necessary medical care and attention."); *Blainey v. Am. S.S. Co.*, 990 F.2d 885, 887 (6th Cir. 1993) (*citing Al-Zawkari v. Am. S.S. Co.*, 871 F.2d 585, 586 n.1 (6th Cir. 1989)); *Matter of Operation Bass, Inc.*, 2017 WL 6029645, at *11, *citing Blainey*, 990 F.2d at 887 (*citing Farrell v. United States*, 336 U.S. 511, 517–19, 69 S.Ct. 707, 93 L.Ed. 850 (1949)) "[t]he vessel owner,

however, is only liable for Maintenance and Cure until the seaman reaches the point of maximum cure: where the injury is either cured or will no longer improve."

As more fully set forth in Section I above and the accompanying Statement of Material Facts, even assuming that Plaintiff was injured aboard the Barge on October 29, 2016, which is disputed, the Plaintiff was paid his full wages through November 10, 2016, when he was declared to be unfit for duty on the Barge 1003. He was then paid maintenance at the union contracted rate of $35 per day (or a total of $7,350) through the date when he was declared to be fit for duty by his treating doctor/surgeon following his examination on May 31, 2017. As an additional benefit to Plaintiff, during the same period of time GLDD also voluntarily paid advances of $42,410 to the Plaintiff to be credited against any settlement or judgment. Further, GLDD also voluntarily paid three additional months (June 2017-August 2017) of health insurance premiums in the amount of $4,713, after the Plaintiff was declared to be fit for duty. Finally, despite having no obligation to do so, GLDD voluntarily continued to pay for Plaintiff's medical care for treatment of his pre-existing osteoarthritis, including an MRI performed in May 2018.

As stated by both the Plaintiff's treating doctor, Dr. Frank, and by the independent medical examiner, Dr. Mannherz, it is clear that any medical treatment that the Plaintiff may require in the future is unrelated to any injuries alleged to have been sustained in the incident of October 29, 2016, but is instead related solely to pre-existing mild osteoarthritis. The need for additional palliative treatment and unrelated to the alleged injury, and no recovery can be permitted.

In *Robinson v. Ergon, Inc.*, No. CV 17-6906, 2018 WL 3368883 (E.D. La. July 10, 2018) the Plaintiff Robinson argued that he was entitled to recover for the costs of future medical care despite the fact that both doctors who had examined him had concluded that he had reached maximum medical improvement ("MMI"). The District Court rejected his position and granted

summary judgement in favor of the ship owner on the Maintenance and Cure claim, stating as follows:

> Here, it is undisputed that both doctors who examined Robinson—Dr. Porter and Dr. Haddad—have concluded that Robinson is currently at MMI. Nevertheless, Robinson contends that a fact question exists as to whether he has actually reached MMI. The Court notes that Dr. Porter and Dr. Haddad have expressed conflicting opinions regarding whether Robinson will potentially need to undergo a total knee replacement—whereas Dr. Porter believes that Robinson may need a total knee replacement within the next fifteen to twenty years, Dr. Haddad "would not consider [Robinson] a candidate for [a] total left knee arthroplasty in the near or distant future." Indeed, two contrary opinions regarding diagnosis or prognosis of an injured seaman does not provide the unequivocal evidence required for termination of maintenance and cure benefits. However, given that both doctors agree that Robinson has reached MMI, no such contrary opinion exists in the case sub judice. Rather, Robinson seeks to have the Court disregard the doctors' shared medical determination of MMI and, instead, replace it with its own opinion as to the medical significance of the potential knee replacement. The point of MMI is a medical determination, not a legal one, and Robinson has pointed to no alternative medical opinion that he is not at MMI. Thus, giving the doctors' opinions a fair reading and construing any ambiguity in favor of Robinson, the Court finds that Magnolia has carried its burden of proving that Robinson has reached MMI. In addition, the Court concludes that in light of both doctors having determined that Robinson is at MMI, Dr. Porter's opinion that Robinson may need a knee replacement, without more, is insufficient to create a genuine issue of material fact necessary to overcome summary judgment. [internal citations omitted].

*Id.* at *2.

Plaintiff McDermott's argument that he may need treatment in the future is even more speculative than that rejected by the Court in Robinson, given the testimony of his own treating surgeon who testified that Plaintiff would not need any future surgery and that any future treatment that might be required would relate solely to his pre-existing chronic osteoarthritis. (Deposition of Dr. Darren Frank, Appx. 096, L. 14-16; Appx. 135, L. 3 – 13; Appx. 144, L. 5-12; Appx. 146, L.

9

1-4; Appx. 147, L 6-7; Appx. 149, 5-10; Appx. 156, L. 5-8). Therefore, Plaintiff's claim for recovery of any additional "cure" must be rejected.

GLDD has satisfied its obligations to pay Maintenance and Cure because all Maintenance payments were made in full, all medical bills were paid and the Plaintiff reached maximum medical improvement as of May 31, 2017. Therefore, GLDD is entitled to summary judgment on Plaintiff's Maintenance and Cure claim and the Third Cause of Action of the Complaint should be dismissed, with prejudice.

### III. CONCLUSION

Defendant GLDD therefore respectfully requests that this Honorable Court grant partial summary judgment in favor of GLDD and dismiss the Third Cause of Action of the Complaint, with prejudice, as a matter of law, and extinguish Plaintiff's right to Maintenance and Cure and award GLLD costs and such other relief as the Court may deem appropriate.

**PALMER BIEZUP & HENDERSON LLP**

By: /s/ Frank P. DeGiulio
Frank P. DeGiulio (ID 41577)
Charles P. Neely (ID 69981)
190 N. Independence Mall West, Suite 401
Philadelphia, PA 19106
(215) 625 9900
Attorneys for Defendant
Great Lakes Dredge and
Dated: August 20, 2018    Dock Co, LLC