UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE MCDERMOTT : | |
| : | CIVIL ACTION |
| vs. : | |
| : | NO. 17-cv-4511 (MAK) |
| GREAT LAKES DREDGE AND DOCK CO. : | |

BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON SEAMAN STATUS,
UNSEAWORTHINESS, AND JONES ACT NEGLIGENCE

COMES NOW Plaintiff Leslie McDermott hereby submits the following Brief in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## INTRODUCTION

Plaintiff is an experienced Jones Act Seaman. In this action, Plaintiff seeks compensation for injuries sustained due to the fault and negligence of Great Lakes Dredge and Dock Co., his employer, because he was injured on its barge. Great Lakes Dredge and Dock Company (referred to hereinafter as "Great Lakes") was the stipulated bare boat charterer of Barge 1003.

Plaintiff worked aboard Barge 1003 from May 2016 to October 29, 2016. During that time, Plaintiff was the Lead Tankerman and "person-in-charge" of Barge 1003, tasked with loading the vessel with fuel to resupply Great Lakes' dredging systems in the Atlantic Ocean off the coast of New York and New Jersey. During that time, Plaintiff and his co-workers were forced to manhandle heavy fuel hoses. It was while manually pulling a heavy 3" steel-reinforced rubber hose with residual diesel in it that plaintiff twisted, and tore two meniscus cartilages in his knee.

The maintenance manager, Smith, and Vice President Becker for Great Lakes were both aware the men were manually moving hoses. was going on. The site manager and safety manager claim they were not aware. Due to the negligent failure of Great Lakes to provide a safe

1

working winch or, sufficient manpower to complete the work, plaintiff was injured. The injury was on October 29, 2016. The injury caused surgery and removal of 50% of the medial meniscus and 15% of the lateral meniscus during surgery. Thereafter, Plaintiff returned to work at other companies as a Tankerman. However, he does this in pain, and his doctor says he is not suited for that work due to his injury. He is currently underemployed, making about one-third of what he made pre-injury, driving a delivery truck.

## PROCEDURAL BACKGROUND

Plaintiff, Leslie McDermott commenced this action under the Jones Act, 46 U.S.C §30104, and the General Maritime Law of the United States for Negligence, Unseaworthiness and Maintenance and Cure, against Defendant on October 5, 2017. A true and correct copy of the Complaint is attached hereto as "Exhibit-1" "003-013". Defendant filed its Answer and Defenses on January 17, 2018. [ECF No. 6]. True and correct copy of Answer is attached hereto as "Exhibit-2" "015-024".

## SUMMARY OF FACTS

Plaintiff submits in support of his motion a separately filed Statement of Undisputed Material Facts, which he summarizes here. In May, 2016, Plaintiff, Leslie McDermott, began working as a Tankerman and Person-in-Charge for defendant on its Barge 1003, assigned to oversee loading and unloading fuel for offshore dredges operating off the coast of New York and New Jersey as a seaman Tankerman. Dep. of Joshua Harris, May 30, 2018, 22:7-25 "141"; 28:16-19 "144". There was a mechanical crane on Barge 1003, a rusty hand-cranked winch that turned two worm gears, and a 30-foot long boom. The winch was intended to lift and extend fuel hoses to the dockside workers at fuel loading facilities. Dep. Harris 23:3-8; 123:18-22 "142,

154". It did not provide this ability for lifting. Dep. Smith 37:14-17; 64:15; 67:7-10 "110,122,124". Dep. Harris 23:3-8; 25:23-24 "142, 143".

McDermott told Great Lakes manager Richard Smith the winch did not work before he was injured. Dep. McDermott 129:9-130:17 "139". The Barge 1003 was turned away from one dock because of the inoperability of the winch and the crew's inability to facilitate the transfer of the fuel loading hoses from the vessel to the dock and vice versa. Dep. Smith 38:1 "111". Smith reported to a vice president the winch needed to be replaced in September of 2016, with a written request on September 22, 2018. Dep. Richard Smith 35:7 "109". Co-worker Josh Harris testified the winch gears were rusty, and that it "basically did not work." Dep. Harris 23:3-8; 89:5-9 "142, 147". Smith, admitted in his 30(b)(6) deposition the winch was not reasonably fit for the intended purpose of efficiently moving anything. Dep. Smith 67:4-14 "124". Smith admitted the winch and boom was likely to cause personal injury to knees, and backs, he did not blame the workers for not using it, and stated it was impractical for the men to use to winch and boom. Dep. Smith 63:15-64:15 "121, 122". Mr. Harris testified that the whole time the men were on the barge he and McDermott requested the electric winch. Dep. Harris 57:16-25 "146".

## ARGUMENT

**A. The Summary Judgment Standard**

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. Fed R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). The non-moving party cannot avert summary judgment with conclusory, self-serving statements, but rather must cite to specific facts in the record. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F. 3d 156, 161 (3d Cir. 2009); Fed. R. Civ. P. 56(c). If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. Id. at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## B. Plaintiff Leslie McDermott is a seaman under the Jones Act.

The Jones Act "provides a cause of action in negligence for 'any seaman' injured in the course of his employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 688(a)). Although the Jones Act does not define the term "seaman," the Supreme Court has outlined a "status-based standard" with two "essential requirements:" (1) the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission;" and (2) the employee must have a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Id. at 368.

This inquiry into seaman status is fact-specific and should generally be submitted to a jury. Id. at 371; see also *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (finding that the issue of seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury."). Summary judgment may be appropriate, however, if "the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991); see also *Chandris*, 515 U.S. at 371 ("And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal

connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict.").

Plaintiff has carried his summary judgment burden on his seaman status. It is admitted by the defendant that the Barge 1003 is a vessel under the general maritime law. See Defendant Great Lakes' Answer to Plaintiff's Request for Admission No. 13 "029". And, the evidence presented establishes that Plaintiff's connection to the Barge 1003 is substantial in terms of duration. See attached declaration of plaintiff regarding seaman status, "Exhibit-4" "035-037".

A "rule of thumb" for an ordinary case for determining seaman status is that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." Id. at 371. In the instant case, it is uncontroverted by the non-moving party that the Plaintiff spent well over 12 hours a day on average working aboard the Barge 1003, loading and unloading fuel and facilitating the unloading of fuel to the offshore dredges, which was the purpose the vessel served. Dep. Harris 47:13-16 "147". Dep. McDermott 47:17-24 "137". Dep. Polly 21:1-2 "156". Plaintiff is a seaman.

**C. Plaintiff Leslie McDermott Is Entitled to Summary Judgment on His Count of Negligence Because Defendant Great Lakes Knew the Winch Was Defective and Failed to Correct That Condition.**

The elements of a Jones Act negligence claim are duty, breach of duty, notice and causation. *Brogan v. United N.Y. Sandy Hook Pilots' Ass'n, Inc.*, 213 F. Supp. 2d 432, 435 (D.N.J. 2002). Under the Jones Act, if the employer's negligence played any part in causing injury, they are liable.

The employer of a seaman owes the seaman a duty under the Jones Act to provide the seaman with a safe place to work, and is liable under the Jones Act if the employer or its agents either knew or should have known of the dangerous condition. "An employer is only liable under the Jones Act if the employer or its agents either knew or should have known of the

dangerous condition." *Ribitzki*, 111 F. 3d at 663. Causation under a Jones Act negligence claim is judged by a featherweight standard, and a seaman need show only the slightest proof that the employer's negligence produced his injury. "[T]he test of a jury case [on the question of causation] is simply whether the proofs justify ... that employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought." *Lies*, 641 F.2d at 771 (quoting *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)). So long as the employer's negligence played some part in the plaintiff's injury, the plaintiff's burden of causation has been met.

Great Lakes had a duty to use reasonable care to furnish Leslie McDermott a reasonably safe place to work. "An employer's duty is measured by what a reasonably prudent person would anticipate or foresee resulting from particular circumstances" *Eddy v. MON RIVER TOWING, INC.*, Civil Action No. 02-1537 (W.D. Pa. June 7, 2004). Quoting *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 357 (3d Cir. 1998) (quoting *Rogers v. Missouri R.R. Co.*, 352 U.S. 500, 506 (1957) (internal quotations omitted).

JONES ACT PROOF, NOTICE, FORESEEABILITY, BREACH, AND CAUSATION:

1) Mr. Richard Smith was the safety advisor on the barge 1003 when it was commissioned in 2014. Dep. Smith 17:11-22 "100". Before McDermott's injury he oversaw maintenance and logistics for the barges and dredges. Dep. Smith 26:22-27:7 "102, 103".
2) Smith learned then the boom and crane was "really hard to use on the winch, and failed to tell the company management this at that time. Dep. Smith 29:15-24; 30:1-9 "104, 105".
3) The winch did not provide lifting to lift and move fuel hoses to the dockside workers and back at fuel loading facilities. Dep. Smith 37:14-17; 64:15; 67:7-10 "110, 122, 124". Dep. Harris 23:3-8; 25:23-24 "142, 143".
4) Harris testified he and McDermott requested a winch that worked the whole time they were on the barge- for months- in 2016. Dep. Harris 57:16-25 "146".

6

5) In August of 2016, Mr. Smith finally told his superiors in management the winch's inoperability **was forcing the crew to physically handle the hoses in order to complete fueling operations.** Dep. Smith 29:15-22; 33:8; 37:9-14 "104, 107, 110"; Dep. Harris 113:15-114:5; "Exhibit-6 "071".

6) Smith submitted a capital improvement request Sept. 22, 2016 to Vice President Becker with remarks to Bill Baumann, Great Lakes' fleet maintenance manager, informing him of the difficulty of use of the winch. Dep. Smith 35:6-12 "109".

7) Fleet Technical manager Baumann admitted when informed the winch was "extremely hard to operate," by Smith, he did not read the informative email telling him the details. This exemplifies negligence. Dep. Baumann 19: 20-21:1-6 "160-162".

8) Mr. Richard Smith admitted in his 30(b)(6) deposition, binding the corporation, the winch was not reasonably fit for the intended purpose of efficiently moving anything. Dep. Smith 67: 4-14 "124".

9) He testified it was extremely difficult to operate when the barge was first commissioned. Dep. Smith 29:15-23 "104".

10) In August of 2016 he reported the winch needed to be replaced because it was extremely hard to operate, and could cause injuries. Dep. Smith 35: 6-23 "109".

11) Mr. Smith knew from when the winch was first installed on the barge that it was inoperable. Dep. Smith 29:15-22; 33:8; 37:9-14 "104, 107, 110".

12) Mr. Smith admitted the winch and boom was likely to cause personal injury to knees, and backs, he did not blame the workers for not using it, and it was impractical for the men to use to winch and boom. Dep. Smith 63:15-64:15 "121, 122".

13) KEY ADMISSIONS BY MR. SMITH

   a) Richard Smith was responsible for the maintenance on the winch during all relevant times. Dep. Smith 24:7-24; 26. "101, 102".

   b) Smith admitted his operations manager did not fill out the proper form to report the deficiency in 2016. Dep. Smith 29:19. "104".

   c) The project operations personnel should have done weekly reports regarding the barge. None have been produced in this matter.

   d) Smith does not fault McDermott for not using the winch, and said the boom and worm gear winch "was not reasonably fit for the purpose for which it was intended to move anything efficiently." Dep. Smith 67:7-10 "124", and "it's not working correctly for us." Dep. Smith 81: 4-8 "128", saying this was a "proper statement."

14) KEY ADMISSIONS BY MR. CAMPBELL:

   Great Lakes safety manager, Mr. Jason Campbell, admitted:

   a) That reasonable care required someone to address the issue of manhandling the hose. Dep. Campbell 195; 13-17 "092". This falls under the Safety Management System.

   b) No action was taken to render the conditions aboard the barge safe for the Plaintiff or crew and under Great Lakes' policy it was not required that the issue be addressed in any particular amount of time. Dep. Campbell 65:12-23; 91:4-7 "079".

   c) Richard Smith had the responsibility to ensure that this injury was prevented. Dep. Campbell 60:6-12 "095".

   d) Smith had an obligation to report the winch deficit of operating the boom, and he should have informed those commissioning the barge. Dep. Campbell 84:7-18 "082".

e) Great Lakes knew that its duty was to provide equipment which was reasonably fit for its purpose and that that duty was non-delegable. Dep. Campbell 79:1-7. "081".

f) Simply put moving a heavy fuel hose is hazardous to health. Dep. Campbell 211:10-17 "093".

g) Leslie McDermott reported the defectiveness of the winch's use, and complied with his responsibilities as an employee and Person-in-Charge to report unsafe working conditions by informing Richard Smith. Dep. McDermott 66:1-9 "138". Dep. Campbell 63:9-15; 130:9-15 "078, 086".

h) That Richard Smith, did not inform him of the defective winch before Mr. McDermott was injured. Dep. Campbell 31:16 "076".

i) That the force or "torque" experienced by the body at the time of an action like that that McDermott was subjected to causes injury and puts you at risk of injury. Dep. Campbell 175:22 "090".

j) Great Lakes never made a determination of whether or not the crane was too difficult or impractical to use, or even investigated the Plaintiff's claims. Dep. Campbell 52:17-23; 30:19-31:8 "077, 075".

k) That "reasonable care" meant someone should have addressed the issue of manhandling the hose. Dep. Campbell 195: 13-17 "092".

l) That Smith should have called the site manager to come and inspect it and make it safe. Dep. Campbell 128:11-22 "084".

m) That Smith should have told the people that built the barge about it. Dep. Campbell 84:7-18 "082".

n) That the incident was not investigated per the Safety Management System (hereafter called SMS) papers. Dep. Campbell, 129:3-24 & 130:1-24; 131:1-12 "085-087".

o) That under the SMS Smith should have documented it as an "NS5," which is a system to track standard work operations. Dep. Campbell 134:1-19. "065".

p) The SMS was set up in part to take action on safety hazards as soon as reasonable. Dep. Campbell 71:12-15. "164".

q) The SMS required taking action on defective equipment shown in SMS (SSA-A-PR-010) at Exhibit 9 of his deposition, requiring Smith to report the difficulty in using the boom. Dep. Campbell 84:7-18. "082".

15) ADMISSIONS BY CO-WORKER JOSH HARRIS

Mr. McDermott's co-worker, Josh Harris, also confirmed the winch was not working:

a) Harris testified the hand-cranked winch used to lift the boom to facilitate the lift and extension of the fuel hoses was rusty, inefficient, not functional, "it basically did not work," and that the "crank was rusty" because the gears were rusty. Dep. Harris 23:3-8; 89:5-9. "142, 147".

b) The winch was not fit for the purpose for which it was intended. Dep. Harris 25:9-15. "143".

c) The men needed the winch on the 3" hose to lift it up. Dep. Harris 108:10 to 109: 4. "148-49".

d) The winch was to lift the hose regardless of it being a 3" or 6" hose to lift it into the air. Dep. Harris 111:20: to 112:8. "150-51".

e) For months Harris and McDermott warned their employer they were at risk of back injury from lifting the hose due to the boom not working. Dep. Harris 113:8-14. "152".

OTHER DOCUMENTS AND TESTIMONY:

16) No documents and no fact witnesses have been produced by Great Lakes which controvert the above assertions. The risk of harm was verified by Richard Smith's testimony, he knew how hard the wind and boom was to use, and knew it was not reasonably fit for its intended use. Dep. Smith 67: 4-14. "124".

NO CONTRIBUTORY NEGLIGENCE BY MR. MCDERMOTT:

Great Lakes duty to furnish a reasonably safe place to work was non-delegable. Great Lakes admitted that Leslie McDermott did everything that was required of him in his capacity as person-in-charge as it relates to the condition of the winch and his duty to report unsafe conditions aboard the barge. Dep. Campbell 63:9-15. "078". Accordingly, Plaintiff has met the standard by which summary judgment should be granted as to the count of negligence, as defendant breached its duty of care to provide a reasonably safe place to work by not furnishing a working winch, and that breach caused the plaintiff to tear his meniscus while dragging a heavy fuel hose.

**D. Plaintiff Leslie McDermott Is Entitled to Summary Judgment on the Count of Unseaworthiness Because the Winch Was Not Reasonably Fit For Its Intended Use.**
THE LAW:

The admiralty doctrine of unseaworthiness is a form of strict liability that requires the owner of a vessel to ensure that a vessel and its appurtenant equipment and appliances are "reasonably fit for her intended service." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971); see also *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 90 (1946). "A ship owner has an

absolute duty to furnish a seaworthy ship." Ribitzki, 111 F.3d at 664 (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960)). To establish a claim for unseaworthiness, a plaintiff must establish: "(1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its intended use; and (4) unseaworthy condition proximately caused his injuries." 664-65. Importantly, the ship owners actual or constructive knowledge of an unseaworthy condition is not essential to liability. An appurtenance of a vessel is a piece of machinery must either be a part of the ship's gear, stored on board, attached to the ship, or under the control of the ship or crew. *Drachenburg v. Canal Barge Co., Inc.*, 571 F.2d at 919 (5th Cir. ). The winch was firmly and physically attached to the vessel during all relevant times and was an appurtenance of the vessel, and must be seaworthy. *Drachenberg*, 571 F.2d at 920 (emphasis added); (Rec. Doc. 71-7 at 5). The warranty of seaworthiness extended to the Plaintiff. He is a Jones Act seaman entitled to the protections of maritime law. The Barge 1003's defective winch and a lack of manpower, necessitating moving a heavy fuel hose by hand, caused the injury. The manner of moving the hose manually, repeatedly, knowing this was unsafe and dangerous is a second unseaworthy condition. A vessel may be unseaworthy for any number of reasons, including "[h]er gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper." *Usner*, 400 U.S. at 499.

The winch did not have sufficient lifting power for the purpose of lifting and extending fuel hoses to the dockside workers at fuel loading facilities. Dep. Smith 37:14-17; 64:15; 67:7-10. "110, 122, 124". Dep. Harris 23:3-8; 25:23-24 "142, 143". Maintenance Manager Mr. Smith

admitted in his 30B6 deposition the winch was not reasonably fit for the intended purpose of efficiently moving anything. Dep. Smith 67: 4-14 "124". Smith testified as follows:

> "Don't you agree that this boom that you reported as 30 feet long and the worm gear and the winch were not reasonably fit for the intended purpose of efficiently moving anything?" he replied "I would say yes, sir." Dep. Smith 67: 4-14"124".

This testimony corroborates the facts laid out in his purchase request which he sent to Great Lakes management before the incident in which Mr. McDermott was injured. Dep. Smith Exhibit-2, attached. ("Exhibit-6" "071"). In that capital improvement request he stated that the winch was "extremely difficult to operate," as the winch was not able to lift the weight of the boom. Id. And furthermore, that its inoperability was the cause of the tankermen having to physically wrangle the hoses. Id.

THE FACTS:

Barge 1003 was unseaworthy because:

17) The winch, a necessary appurtenance, was inoperable, not fit for its intended purpose per Richard Smith. Dep. Smith 67: 4-14 "124".

   a) Mr. Smith admitted the winch and boom was likely to cause personal injury to knees, and backs, did not blame the workers for not using it, and it was impractical for the men to use to winch and boom. Dep. Smith at page 63, line 15 to page 64, line 15 "121, 122".

   b) There was not sufficient manpower to safely move the 100" long 287lb hose.

   c) Barge 1003's mission was to load fuel and unload fuel for Great Lakes' offshore dredges, and the winch was essential to that mission.

13

d) The safety manager, Campbell, testified we limit 50lbs lifting per man, for 100lbs, use mechanical devices regardless of manpower; doesn't know limit for pulling. dep. Campbell 172:20-24; 173:23 "089-90".

e) A vessel owner's duty to prevent unseaworthy conditions is absolute, continuing and non-delegable, and lack of knowledge or of opportunity to correct such conditions does not mitigate the owner's duty.

f) Regardless of notice being required, the Capital Improvement Request sent by Richard Smith to Bill Baumann establishes knowledge of the defective condition of the mechanical crane and winch.

g) (See attached exhibit 6 "071").

## CONCLUSION

The essential material facts of this case are not in dispute. The winch of Barge 1003 was not operable, and was not reasonably fit for the purpose for which it was intended. Great Lakes knew that the winch was defective and not operating. On September 22, 2016, over a month before McDermott's injury it knew men were manhandling the hoses, and had overexertion injuries previously on barges.

Mr. Smith ordered an electric winch as "imperative" on his Sept. 22, 2016 memorandum, noting the risk of injuries. Great Lakes delay in supplying a working winch aboard Barge 1003 was negligence, unreasonable, and a violation of the Jones Act, the warranty of seaworthiness, 33 CFR 96.230, and concomitant SMS documents, the OSHA general duty clause, and its own reference to the crane lifting standard of OSHA found at 1926.251.

For the foregoing reasons, Plaintiff Leslie McDermott urges this Court to Grant his Motion for Partial Summary Judgment as to Liability.

Dated August 20, 2018

                                        Respectfully submitted,

*/s/ S. Reed Morgan*
ATTORNEY

THE CARLSON LAW FIRM
Texas State Bar No: 14452300
100 E. Central Texas Expy
Killeen, TX 76541
Telephone: (800) 359-5690
Facsimile: (254) 526-8204

E-Mail: rmorgan@carlsonattorneys.com


*/s/ Gregory G. Paul*
Gregory G. Paul
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
Telephone: (412) 259-8375
Facsimile: (888) 822-9421
Email: gregpaul@morgan-paul.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2018, a true and correct copy of the foregoing was served on the below listed counsel via electronic filing:

Palmer Biezup & Henderson LLP
Charles Neely
Frank DeGuilio
190 N. Independence Mall West
Suite 401
Philadelphia, Pennsylvania 19106

Attorneys for Defendant

Great Lakes Dredge and Dock Co., LLC

                                                                      /s/ *S. Reed Morgan*
                                                                       S. Reed Morgan