UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE MCDERMOTT | : |
| | : CIVIL ACTION |
| vs. | : |
| | : NO. 17-cv-4511 (MAK) |
| GREAT LAKES DREDGE AND DOCK CO. | : |

**DEFENDANT'S BRIEF IN OPPOSITION TO THE PLAINTIFF'S
MOTION TO EXCLUDE DEFENDANT'S EXPERT WITNESS RICHARD DINAPOLI**

Defendant, Great Lakes Dredge and Dock Co., LLC, (hereinafter "Defendant" or "GLDD"), by and through its undersigned attorneys, Palmer Biezup & Henderson LLP, submits this Brief in Opposition to the Plaintiff's Motion To Exclude Defendant's Expert Witness Richard Dinapoli.

## I. INTRODUCTORY STATEMENT

The Plaintiff's Motion consists of a hodge-podge of disjointed legal concepts peppered with misleading and incorrect representations of the facts and law, all aimed at silencing the Defendant's maritime liability expert Richard DiNapoli and keeping the truth and his important opinions from the jury. DiNapoli is a highly qualified maritime expert and the Plaintiff rightfully makes no claim that he lacks the necessary expertise and experience to provide the opinions set forth in his Fed. R. Civ. P. 26(a)(2)(B) expert report, a copy of which is attached as Exhibit 1. Instead, the Plaintiff contends that DiNapoli's testimony and opinions should be excluded only because they are based on his firsthand personal observations and site inspections and on facts reasonably relied on by experts in the maritime field. This argument runs entirely afoul of Fed. R. Evid. 703 which expressly permits an expert to formulate and provide opinions based on personal observations or facts or data that the expert is made aware of, regardless of whether the facts or

data are otherwise separately admissible. The arguments of the Plaintiff's counsel must be rejected and the Motion denied to prevent manifest injustice.

## II. FACTS

This maritime case arises out of an alleged injury to the Plaintiff's knee which is claimed to have occurred on October 29, 2016. On the date of the alleged injury the Plaintiff was working as a seaman on board Defendant's Fuel Barge 1003. Until just recently when he changed his story, the Plaintiff consistently and falsely claimed that he sustained the injury while handling a heavy six inch diameter fuel hose while the Barge was loading fuel at an oil terminal called KMI in Carteret, New Jersey. (See Ex. 2, Answers to Defendant's Interrogatories, Nos. 1, 5, 6 and 7 and Ex. 3, Deposition of Leslie McDermott, pp. 84:14 to 99:4). In retrospect it has become clear that the Plaintiff's false claims that the Barge was at a different oil terminal and that a six inch hose was used were intended to embellish his story of how and why his injury occurred.[1]

On May 30, 2018, the Plaintiff's co-worker Joshua Harris, the only other person aboard the Barge when the Plaintiff was allegedly injured, was deposed and contradicted the Plaintiff's allegations. Harris testified that a fifty-foot long, three inch diameter rubber fuel hose was used for the fueling on the date in question and that the six inch hose had only ever been used one time while he was assigned to the Barge. (Ex. 5, Deposition of Joshua Harris, pp. 34:7-16; 56:15-23; 85:1-8). The weight of a three inch diameter hose is dramatically less than the weight of a six inch diameter hose. This was the first indication that the Plaintiff's claim about the size of the hose in use was untrue.

---

[1] On August 3, 2018, the deadline for completion of all fact and expert discovery established by the Court, the Plaintiff changed his story and now admits that the hose in question was only 3 inches in diameter and that the barge was loading at a different oil Terminal in Elizabeth, New Jersey, called New York Plaza Marine Terminal. (See Plaintiff's Supplemental Answers to Defendant's Interrogatory Nos. 1 and 5, attached as Exhibit 4).

2

On May 4, 2018, the Plaintiff served a Fed. R. Civ. P. 30(b)(6) Notice of Deposition requesting testimony on fifteen different subjects. Two of the subjects requested information about the diameter, length, weight and manufacturer of the "hose." Two witness were initially designated and produced by GLDD in response to the Notice: Rich Smith, a Port Engineer (May 10, 2018) and Jason Campbell, Director of Safety and Risk (May 23, 2018). The Plaintiff's counsel asked Mr. Smith if he knew the weights of two of the five fuel hoses that were aboard the Barge on the date of the alleged incident. Mr. Smith testified that he did not know and that the weights of fuel hoses might not be internally available within GLDD. (Ex. 6., Deposition of Rich Smith, pp. 51:6 to 52:9). Mr. Smith was never asked if he knew what fuel hose was actually used on the date in question -- at that time the Plaintiff's counsel was relying on his own client's prior sworn testimony that a six inch hose was used, testimony which has subsequently been proven to be false. Similarly, and for the same reason, Mr. Campbell was not asked if he knew what fuel hose was used on the date in question.

On May 29, 2018, prior to the deposition of the Plaintiff's co-worker, Joshua Harris, GLDD produced purchase orders, invoices and other documents which provided the names of the two companies which fabricated and supplied the five fuel hoses on the Barge on the alleged date of the Plaintiff's injury (K.A.D. Industrial Rubber Products and JGB Enterprises, Inc.), and listed the diameter and length of each hose. (Ex. 7, Bates Nos. GLDD 2263 to 2288). Mr. Harris was not questioned about these documents during his deposition but as indicated above he testified that a fifty foot, three inch diameter fuel hose was used on the date in question.

Because information regarding the weights of each of the fuel hoses was unavailable internally at GLDD, the Defendant's counsel contacted the two companies which fabricated and

supplied the five hoses to obtain weight information.[2] Additional documents regarding the components of the fuel hoses and the weights were obtained from the two manufacturers and were produced to the Plaintiff on June 25, 2018. (Ex. 8, Bates Nos. GLDD 2665-2687). On the same date GLDD also issued Supplemental Initial Disclosures to the Plaintiff identifying Ben Spence of K.A.D. Industrial Rubber Products and Ted Cole of JGB Enterprises, Inc. as the two witnesses who could testify about the specifications of the Barge's fuel hoses, including their weights. (Ex. 9, Supplemental Initial Disclosures, June 25, 2018). The Plaintiff never noticed or otherwise requested the depositions of either of these designated witnesses.[3]

In addition, following further investigation in June it was determined that the Barge was not at the KMI Oil Terminal on date of the incident as claimed by the Plaintiff but instead loaded fuel at the New York Plaza Marine Terminal in Elizabeth, New Jersey, as confirmed by documents obtained by GLDD's counsel from Plaza Marine and produced to the Plaintiff on June 25, 2018. (Ex. 11, Bates Nos. 2446-2450). The documents obtained by Plaza Marine include forms which the Plaintiff himself completed on October 29, 2016, and show that the quantity of fuel loaded on the Barge was measured by the terminal's automatic flow meter. John Barbarise, the Plaza Marine employee who provided the documents and information about the oil terminal to GLDD's counsel, was identified as an additional witness having relevant knowledge in GLDD's Supplemental Initial Disclosures dated June 25, 2018. (Ex. 9, Supplemental Initial Disclosures). Barbarise subsequently provided GLDD's counsel with a written Declaration regarding the documents in which he stated that the use of the terminal's flow meter necessarily meant that only a two inch or

---

[2] As of May 29, 2018, the Plaintiff's counsel had the documents which identified the hose manufacturers and could have contacted the companies directly to obtain additional information but apparently did not do so.

[3] GLDD's counsel subsequently obtained and produced Declarations from the representatives of the two hose manufacturers, Ted Cole and Ben Spence, summarizing the specifications of each of the five hoses aboard the Barge. (Declarations attached as Ex. 10).

4

three inch fuel hose could have been used to load the fuel on October 29, 2016. (Ex.12, Declaration of John Barbarise). The plaintiff's counsel has never noticed the deposition of Mr. Barbarise.

The deadline for the Plaintiff to produce expert reports as the party bearing the burden of proof on liability and damages was July 2, 2018. (Scheduling Order, ECF Doc. 16). On July 5th and 9th the Plaintiff's counsel produced reports from two liability experts, Mitchell Stoller and Ken Blundell. (Reports attached as Exhibits 13 and 14 respectively). Each expert based his opinions regarding alleged negligence and unseaworthiness on the incorrect assumptions that a six inch fuel hose was used on October 29, 2016, and that the Barge loaded at the KMI Terminal in Carteret. Significantly, the lists of documents and depositions reviewed by each expert for the purpose of preparing their reports clearly demonstrate that neither expert had reviewed or considered: (1) the deposition testimony of the co-worker Josh Harris that a three inch hose was used on the date in question; (2) *any* of the documents previously produced by GLDD which provided information about the hose manufacturers and the composition and weights of the Barge hoses; or, (3) any of the documents produced by GLDD which show that the Barge loaded at the Plaza Marine Terminal on the date in question, not at KMI as the Plaintiff claimed. (See, Ex. 13, pp. 5-6; Ex. 14, p. 2) As a result, Stoller's opinions were all based on his wildly inaccurate and unsupported claim that the fuel hose used on the date in question was six inches in diameter and weighed between 491 and 500 pounds. Blundell's opinions were likewise based on his erroneous determinations that the six inch hose was used and that it weighed at least 208.5 lbs. Neither of the Plaintiff's liability experts personally inspected Barge 1003 (or its two identical sister barges) or the manual winches that are the subject of the experts' opinions and criticism, despite being informed by GLDD's counsel that such inspections could be arranged.[4] And, to GLDD's knowledge, neither of the Plaintiff's experts

---

[4] The Plaintiff's counsel only recently renewed a previously abandoned request to conduct an inspection of Barge 1003. Although the deadline for the completion of discovery has passed, GLDD's counsel nevertheless has offered

conducted site inspections of the KMI Terminal in Carteret (the terminal which they erroneously based their opinions on) or the Plaza Marine Terminal in Elizabeth where the Barge actually loaded on the date of the alleged injury.

The deadline for GLDD to produce its expert reports to rebut the Plaintiff's experts was July 30, 2018. (Scheduling Order, ECF Doc. 16). On that date GLDD produced the report of its liability expert Richard DiNapoli, together with all disclosures required by Fed. R. Civ. P. 26(a)(2). Prior to issuing his report, DiNapoli conducted various personal inspections and site visits. On June 25, 2018, in order to evaluate and respond to the allegations and opinions of the Plaintiff's experts regarding the Barge's boom and winches, he personally inspected and operated one of the manual winches which had been removed from Barge 1003 and inspected and operated the manual winches and boom on the identical sister barge, Barge 1001. On July 19, 2018, DiNapoli also conducted a personal site inspection of the Plaza Marine Terminal where the Barge loaded on the date in question. DiNapoli's expert report provides a detailed description of these personal inspections and site visits, together with opinions and conclusions drawn from his personal observations and from documents and data produced in the course of the litigation pertaining to the fuel hoses, the Barge, the terminal, the boom and the winches.

Based on his personal observations and analysis of the data and documents DiNapoli's report sets forth his informed opinions and conclusions to rebut the Plaintiff's liability experts including the following: (a) the inherent configuration of the Plaza Marine Terminal necessarily means that the fuel had to be loaded through a two or three inch hose *supplied by the terminal*, not by the Barge, and that it was physically impossible for a six inch diameter hose (or a three inch

---

to arrange the inspection on a date in September requested by the Plaintiff's counsel. See Ex. 15, Letter to Reed Morgan, Esq., pp. 2-4 setting forth the background of prior offers to arrange inspections by the Plaintiff which were not pursued.

6

diameter hose with a six inch flange) to have been used; (b) that if the Plaintiff single-handedly disconnected the terminal's three inch hose after loading was completed as he claims, then he pulled, moved or lifted no more than a ten foot section of hose that weighed 20 to 22 lbs.; (c) that the weight moved or lifted by the Plaintiff was well within established safe lifting and pulling standards; (d) that the calculated height difference between the deck of the Barge and the Plaza Marine dock was only 1 foot, 11 inches on the date in question based on the state of the tide and the dimensions of the Barge and dock, not the unsubstantiated height difference of 20 feet alleged by the Plaintiff's expert Stoller; (e) that it was completely unnecessary to use the boom and winch aboard the Barge to handle the short length of the terminal's three inch diameter hose on the date in question, rendering the Plaintiff's allegations regarding the efficiency or condition of the boom and winches irrelevant; (f) that in any event the evidence and his personal observations demonstrate that the manually operated boom and winch aboard the Barge was approved by the U.S. Coast Guard and American Bureau of Shipping and was operable and capable of performing as intended by the manufacturer on the date in question.

### III. LEGAL ARGUMENT

**A. There is no Basis to Exclude or Limit the Testimony of DiNapoli under the applicable Rules of Evidence.**

Federal Rule of Evidence 702 governs the admissibility of qualified expert testimony, providing that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Plaintiff's Motion contains sweeping and unsupported contentions that DiNapoli's opinions and conclusions should be excluded, but fails to articulate with specificity how or why the criteria set forth in Fed. R. Evid. 702 are not satisfied. The Plaintiff is not entitled to silence DiNapoli simply because: (1) the Plaintiff's experts failed to consider critical documents, data and testimony produced in the litigation which were properly relied on by DiNapoli; (2) the Plaintiff's experts failed to conduct personal inspections and site visits to obtain relevant information before issuing their reports; or, (3) there is inconsistent or conflicting factual evidence in the case relevant to issues considered by the expert. Contrary to the Plaintiff's claims, DiNapoli's comprehensive report details all of the data, documents, testimony and personal observations which he relied on to form the basis of his opinions and conclusions, fully satisfying all of the requirements of Fed. R. Evid. 702.

Importantly, the Plaintiff's Motion fails to discuss or for that matter even mention Fed. R. Evid. 703. Rule 703, which effectively eviscerates the Plaintiff's arguments, provides as follows:

> Rule 703. Bases of an Expert's Opinion Testimony.
>
> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The Plaintiff's chief complaint is that DiNapoli should not be permitted to offer opinions to the extent that they are based on his personal observations during a site inspection at the Plaza Marine Terminal and inspections of the manual winch removed from Barge 1003 and the boom and manual winches installed on the sister barge. This position is simply contrary to the law, now embodied in Rule 703, because expert opinions based on personal observations have always been

permitted, even under the Common Law predating the Rules: "Of course, if an expert witness has firsthand knowledge of material facts, he may describe what he has observed and base his inferences on those facts under both the traditional views and the Federal Rules of Evidence." Kenneth S. Brown et al., *McCormick on Evidence, Practitioner Treatise Series*, § 14 at 119 (7th ed. 2013). *See also*, 3 *Federal Rules of Evidence Manual* § 703.02 (Matthew Bender 10th Ed.) ("At common law, an expert could testify only on the basis of information that was either personally known to the witness or was part of the record."); Rule 703 Advisory Committee Notes, 1972 Proposed Rules. ("Facts or data upon which expert opinions are based may, under the rule, be derived from three possible sources. The first is the firsthand observation of the witness, with opinions based thereon traditionally allowed.").

DiNapoli formed opinions regarding the Barge's boom and winch (so heavily criticized by the Plaintiff's experts without any personal inspection) through his own personal observation and inspections – nothing could be more reliable or permissible under Rules 702 and 703. In addition, DiNapoli formed opinions regarding which fuel hose was used on the date in question at the Plaza Marine Terminal and the length and weight of the section of the hose handled by the Plaintiff based on his personal observations of the configuration and characteristics of the Terminal during a site visit on July 19, 2018. There is no basis to exclude these opinions based on DiNapoli's personal observations which are expressly permitted under Rule 703.

Moreover, and in addition, the Plaintiff's Motion completely ignores the fact that Rule 703 expanded the Common Law and permits an expert to form opinions based on facts or data presented to him and reviewed outside of the courtroom, even if the facts and data would not otherwise be separately admissible in evidence. The Plaintiff argues in part that DiNapoli's opinions regarding which fuel hose was used on the date in question and the length and weight of

the section of the hose handled by the Plaintiff should be excluded because he relied in part on statements and information provided to him by personnel at the Plaza Marine Terminal during his site visit. A maritime expert like DiNapoli who is asked to provide opinions regarding the cause and circumstances surrounding an alleged injury at a third-party marine oil terminal would naturally and reasonably inquire about and rely on information regarding terminal procedures from the terminal operators. DiNapoli's reliance on that information is entirely permissible and proper: "Rule 703 departs from the common law in permitting an expert to form an opinion based on facts or data that are not admissible in evidence, so long as they are the type that is reasonably relied upon by other experts in the field." 3 *Federal Rules of Evidence Manual* § 703.02[2] (Matthew Bender 10th Ed.). Accordingly, under Rule 703 there is no basis to exclude DiNapoli's opinions on the grounds that he relied in part on statements and information from the terminal personnel, even if those statements would be deemed inadmissible hearsay. The issue of whether otherwise inadmissible evidence relied on by an expert can be disclosed to the jury is an entirely separate question to be determined under Rule 703 at the time of trial under the standard set forth in the last sentence of the Rule. Kenneth S. Brown et al., *McCormick on Evidence, Practitioner Treatise Series*, § 324.3 at 578 (7th ed. 2013).

The Plaintiff's contention that DiNapoli's testimony should be excluded because he is a "hybrid" fact witness or a "fact gatherer" is a spurious argument that should be rejected out of hand. The law is quite clear that an expert is entitled to personally observe and inspect instrumentalities and locations which are relevant to the matters at issue in a lawsuit and to base opinions on those personal observations and inspections. In fact, experts like the Plaintiff's liability witnesses who forego the opportunity to conduct personal observations and inspections open themselves up to an argument that their opinions lack both reliability and credibility.

**B.     The Plaintiff's Arguments Based on Fed. R. Civ. P. 30(b)(6) are meritless.**

The Plaintiff's Motion includes a separate argument that DiNapoli's opinions should be excluded because two GLDD employees, Smith and Campbell, did not know the length, diameter and weight of the Barge fuel hoses at the time of their depositions taken in May, 2018, in connection with a Fed. R. Civ. P. 30(b)(6) Notice of Deposition.

In the first instance it is difficult to take this argument seriously when the Plaintiff himself and his co-worker Josh Harris were actually present aboard the Barge and used the hose in question – they presumably had first-hand personal knowledge of the requested information but, as noted above, their testimony regarding the hose characteristics was in direct conflict until just recently when the Plaintiff changed his story and admitted that a three inch diameter hose was used.[5]

But beyond the foregoing, the Plaintiff's arguments to exclude Di Napoli's testimony based on Rule 30(b)(6) must fail because they do not accurately reflect the requirements and legal effect of the Rule and entirely ignore the fact that GLDD identified and designated two witnesses who could provide the requested testify about the specifications of the hoses aboard the Barge. The Plaintiff chose not to take the depositions of those witnesses and therefore has no right or basis to claim that GLDD is somehow prevented from offering evidence regarding the identity and characteristics of the hose.

As discussed above, in May, 2018, GLDD initially designated and produced two witness to respond to the 15 subjects listed in the Plaintiff's 30(b)(6) Notice -- Rich Smith, a Port Engineer and Jason Campbell, Director of Safety and Risk. The Plaintiff's counsel asked Mr. Smith if he knew the weights of two of the five fuel hoses that were aboard the Barge on the date of the alleged

---

[5] In addition, the weight, diameter and length of the fuel hoses on the Barge has become irrelevant in light of the discovery that only the terminal's two or three inch diameter fuel hose could have been used to load the fuel on the date in question.

incident. Mr. Smith testified that he did not know, and that the weights of the fuel hoses might not be available internally within GLDD. (Ex. 6., Deposition of Rich Smith, pp. 51:6 to 52:9). Importantly, and contrary to the Plaintiff's Motion, neither Mr. Smith nor Mr. Campbell were asked if they knew which fuel hose was actually used on the date in question.

On May 29, 2018, GLDD produced purchase orders, invoices and other documents which provided the names and contact details of the companies which fabricated and supplied the five fuel hoses on the Barge on the alleged date of the Plaintiff's injury (K.A.D. Industrial Rubber Products and Geib Industries/JGB Enterprises, Inc.), and listed the diameter and length of each hose. Because information regarding the exact weights of the fuel hoses was not available internally at GLDD, the Defendant's counsel contacted the two manufacturers of the hoses to obtain that information. Documents obtained from the manufacturers which identified the component parts and weights of the fuel hoses (including their fittings) were produced to the Plaintiff, together with Supplemental Initial Disclosures identifying Ben Spence of K.A.D. Industrial Rubber Products and Ted Cole of JGB Enterprises, Inc. as the two witnesses who could provide testimony about the specifications of the Barge's fuel hoses, including their weights. (See Exhibits 8 and 9). The Plaintiff never noticed the depositions of either of these designated witnesses.

The Plaintiff argues that DiNapoli should be precluded from offering any opinions about the identity and characteristics of the fuel hose used on October 29, 2016, or the handling of the hose by the Plaintiff and/or his co-worker. Despite the fact that the Plaintiff chose not to depose the witnesses from the hose manufacturers, his counsel now argues that GLDD should be estopped from offering any evidence whatsoever about the hose which was used merely because Smith and

Campbell were unable to provide the hose weights during their depositions in May, 2018. This argument must be rejected for several reasons.

First, the Plaintiff bases the argument in part on the false claim that Mr. Smith and Mr. Campbell were unable to identify *what* hose was used on the date in question. But neither witness was ever asked to identify the hose that was used because the Plaintiff's counsel relied entirely on his own client's prior sworn testimony that a six inch hose was used, testimony which has subsequently been proven to be false. Accordingly, DiNapoli's opinions regarding *what* hose was used are not in conflict with any testimony provided by Smith or Campbell.

Second, the Plaintiff completely ignores the fact that following the depositions of Smith and Campbell GLDD undertook a good faith investigation to obtain the requested information about the hoses which were aboard the Barge from outside sources. All documents required to identify the two manufacturers and determine the length and diameter of the five hoses were produced on May 29, 2018 and on June 25, 2018, GLDD produced all documents required to determine the total weight of each hose. Most importantly, on June 25, 2018, GLDD identified and designated Ben Spence of K.A.D. Industrial Rubber Products and Ted Cole of JGB Enterprises, Inc. as the two witnesses who could provide testimony about the exact specifications of the Barge's fuel hoses, including their weights. The fact that the two witnesses designated to provide the hose information were not GLDD employees is of no moment – "[t]he [30(b)(6)] representative does not have to be an officer or director of the organization, does not need to be the most knowledgeable person, *and in fact does not even need to be employed by the organization.*" Stephen Baicker-McKee, et al., *Federal Civil Rules Handbook*, at 828 (25th ed. 2018), citing *Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 267 (E.D.Pa. 2015) (emphasis added).

The Plaintiff never sought to depose the two designated witnesses from the companies that supplied the hoses and, as a result, cannot be permitted to claim that GLDD should be prevented from presenting evidence about the hose in question simply because Smith and Campbell did not know the hose weights at the time of their depositions.

Finally, even assuming solely for argument's sake that DiNapoli's opinions are somehow in conflict with testimony given by Smith or Campbell in connection with the Plaintiff's Rule 30(b)(6) Notice (which is certainly not the case), the Rule 30(b)(6) testimony could not serve as a valid basis to preclude DiNapoli from testifying. The Plaintiff misapprehends the legal effect of Rule 30(b)(6) testimony. Contrary to the contentions made in the Plaintiff's Motion, the testimony of a Rule 30(b)(6) witness has the legal effect of an evidentiary admission only – it does not constitute a judicial admission and thus may be controverted or explained by the corporate party:

> "The testimony of a Rule 30(b)(6) deponent does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes. The Rule 30(b)(6) testimony also is not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony."

7 James William Moore, et al., *Moore's Federal Practice*, § 30.25[3], p. 30-74 (3rd Ed. 2017). *See also*, *Vehicle Market Research, Inc. v. Mitchell International, Inc.*, 839 F.3d 1251, 1259 (10th Cir. 2016); *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2nd Cir. 2015); *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F.Supp.3d 437, 451 (E.D.Pa. 2014).

## IV. CONCLUSION

For all of the foregoing reasons Defendant GLDD respectfully requests that this Honorable Court enter an order in the form submitted herewith denying the Plaintiff's Motion To Exclude Defendant's Expert Witness Richard Dinapoli.

 

                                                  **PALMER BIEZUP & HENDERSON LLP**

By:   /s/ Frank P. DeGiulio
       Frank P. DeGiulio (ID 41577)
       190 N. Independence Mall West, Suite 401
       Philadelphia, PA 19106
       (215) 625 9900
       Attorneys for Defendant
       Great Lakes Dredge and
Dated: September 5, 2018        Dock Co, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief in Opposition to the Plaintiff's Motion to Exclude Defendant's Expert Witness was served via ECF on September 5, 2018, upon the following counsel:

S. Reed Morgan, Esquire
The Carlson Law Firm, P.C.
100 E. Central Texas Expressway
Killeen, TX 76541

Gregory G. Paul, Esquire
Morgan & Paul
100 First Avenue, Suite 1010
Pittsburgh, PA 15222

PALMER BIEZUP & HENDERSON LLP

By:   /s/ Frank P. DeGiulio
       Frank P. DeGiulio (ID 41577)

PBH541184.1